IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ABRAHAM DELA CRUZ,<br><br>                    Plaintiff,<br><br>     v.<br><br>MARTIN J. O'MALLEY, Commissioner of Social Security,[1]<br><br>                    Defendant. | CIV. NO. 23-00343 JMS-RT<br><br>ORDER REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS |

## ORDER REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS

## I. INTRODUCTION

Plaintiff Abraham Dela Cruz ("Claimant") seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, Martin J. O'Malley (the "Commissioner"). The Commissioner adopted Administrative Law Judge James Carberry's ("ALJ") June 14, 2022 written decision finding Claimant not disabled. Claimant argues that the ALJ committed legal error in: (1) improperly rejecting Claimant's testimony as to his physical

---

[1] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (providing that action survives regardless of any change in the person occupying the office of Commission of Social Security). The Clerk of Court is DIRECTED to change the case name to the caption herein.

limitations; and (2) failing to fully develop the record.  ECF No. 8 at PageID.815.
Claimant asserts that neither error is harmless and that either error is sufficient to
support remand to properly consider his testimony and medical opinions.  *Id*. at
PageID.809.  The court agrees with Claimant that the ALJ failed to fully develop
the record upon which a proper residual functional capacity could be assessed and
concludes, on this basis alone, that remand is warranted.  Accordingly, as
discussed below, the court REVERSES the Commissioner's final decision and
REMANDS for further proceedings.

## II.  <u>BACKGROUND</u>

### A.    Disability Determination and the Commissioner's Findings and Decision

On May 5, 2020, Claimant applied for (1) Disability Insurance
Benefits under Title II of the Social Security Act, Administrative Record ("AR")[2]
304–310, and (2) Supplemental Security Income under Title XVI of the Social
Security Act, AR 282–303.  Claimant alleges a disability based on bipolar disorder,
depression, anxiety, and schizophrenia as of July 31, 2019.  AR 304, 406.

The Social Security Administration ("SSA") requires an ALJ to assess

---

[2]  The AR is numbered sequentially from pages 1 to 771 and is available at ECF No. 6.

disability[3] through a five-step sequential analysis, which asks:

> (1)  Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled and not entitled to disability insurance benefits.  If not, proceed to step two.
>
> (2)  Has the claimant's alleged impairment been sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.
>
> (3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled and therefore entitled to disability insurance benefits.  If not, the claimant's residual functional capacity is determined in preparation for step four.
>
> (4)  Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> (5)  Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)

(citing 20 C.F.R. §§ 404.1520 (explaining the five-step sequential evaluation

process used to decide whether a claimant is disabled), 416.920 (same)); *see also*

---

[3]  A claimant is "disabled" for purposes of the Social Security Act if (a) he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

*Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations do not alter the familiar "five-step sequential evaluation process," and that the purpose of 20 C.F.R. § 404.1520(a)(1) is to explain that process). For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098. If the claimant reaches step five, the burden shifts to the Commissioner. *Id*.

At Step 1, the ALJ found that Claimant has not engaged in substantial gainful activity since July 31, 2019, the alleged onset date of alleged disability.[4] AR 18. At Step 2, the ALJ found Claimant's severe impairments to be bipolar disorder with psychotic features, substance addiction, and depressive disorder. *Id*. The ALJ found that Claimant's other impairments—hypertension, benign vertigo, hyperlipidemia, and hand numbness—not severe. *Id*.

At Step 3, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of Appendix 1 listings 12.03 (schizophrenia spectrum and other psychotic disorders)

---

[4] Although Claimant worked after the alleged onset disability date of July 31, 2019, the ALJ found that Claimant's earnings—$336 in the third quarter of 2019 and $428 in the fourth quarter of 2019—are not consistent with substantial gainful activity. *See* AR 18; *see also* AR 329, 346.

4

and 12.04 (depressive, bipolar and related disorders).  AR 19.  In preparation for

Step 4, the ALJ determined Claimant's residual functional capacity to perform a

full range of work at all exertional levels, with nonexertional exceptions: can

perform simple routine tasks and have occasional interaction with coworkers and

supervisors, but no interaction with the general public.  AR 21.

   At Step 4, the ALJ found Claimant unable to perform any past

relevant work as a shipping and receiving clerk, construction laborer, and

maintenance worker/lawn mower.  AR 26–27.  Finally, at Step 5, the ALJ

considered Claimant's age, education, work experience, and residual functional

capacity and found that Claimant can perform jobs that exist in significant numbers

in the national economy such as recycler, order selector, or janitor.  AR 28.  The

ALJ thus concluded at Step 5 that Claimant is not disabled.  *Id*.

## B. Procedural Background

   On October 13, 2020, the Commissioner denied Claimant's claim and

on January 8, 2021, denied the claim on reconsideration.  AR 152–55, 159–64.

Claimant timely requested a hearing that took place on June 2, 2022, at which

Claimant and vocational expert, Robin L. Generaux, testified.  AR 37–60.  On June

14, 2022, the ALJ issued his written decision finding Claimant not disabled.  AR

12–36.  The Appeals Council denied Claimant's request for review on June 15,

2023, rendering the ALJ's written decision the final decision of the Commissioner.

AR 1–6.  Claimant commenced this action for judicial review on August 15, 2023.
ECF No. 1.

Claimant filed his Opening Brief on November 13, 2023.  ECF No. 8.
The Commissioner filed an Answering Brief on December 13, 2023.  ECF No. 10.
Claimant filed a Reply Brief on December 27, 2023.  ECF No. 11.  The court held
oral argument on February 9, 2024.  ECF No. 13.

### III.  <u>STANDARD OF REVIEW</u>

Congress has provided a limited scope of judicial review of the
Commissioner's decision to deny benefits under the Social Security Act.  *See* 42
U.S.C. § 405(g).  "For highly fact-intensive individualized determinations like a
claimant's entitlement to disability benefits, Congress places a premium upon
agency expertise, and, for the sake of uniformity, it is usually better to minimize
the opportunity for reviewing courts to substitute their discretion for that of the
agency."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir.
2014) (internal quotation and citation omitted).

Guided by this principle, courts employ "three important rules" when
assessing an ALJ's decision.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (2015).
First, courts "'leave it to the ALJ to determine credibility,[5] resolve conflicts in the

---

5  Effective March 27, 2017, the Social Security Administration eliminated use of the
term "credibility" from its sub-regulatory policy, clarifying that "subjective symptom evaluation
(continued . . .)

testimony, and resolve ambiguities in the record.'"  *Id.* (quoting *Treichler*, 775
F.3d at 1098).  Second, courts will "disturb the Commissioner's decision to deny
benefits 'only if it is not supported by substantial evidence or is based on legal
error.'"  *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).
Substantial evidence means "more than a mere scintilla but less than a
preponderance[;] it is such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d
519, 522 (9th Cir. 2014) (internal quotation and citation omitted).  "[W]hatever the
meaning of substantial in other contexts, the threshold for such evidentiary
sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)
(internal quotation marks omitted).

       In addition, if the evidence is "susceptible to more than one rational
interpretation, the ALJ's decision must be affirmed."  *Smartt v. Kijakazi*, 53 F.4th
489, 494 (9th Cir. 2022) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009)).  But even if the Commissioner's findings are supported by substantial
evidence, the decision should be set aside if proper legal standards were not
applied when weighing the evidence.  *E.S. v. Kijakazi*, 2022 WL 4292333, at *6

---

is not an examination of an individual's character," but "rather is an evidence-based analysis of
the administrative record to determine whether the nature, intensity, frequency, or severity of an
individual's symptoms impact his or her ability to work."  Soc. Sec. Ruling 16-3p; Titles II and
XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166-01.

(N.D. Cal. Sept. 16, 2022) (citing *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978)).  And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  An error is harmless if it is "'inconsequential to the ultimate nondisability determination'" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1099).

        Nevertheless, "[a] clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency."  *Brown-Hunter*, 806 F.3d at 492 (citation omitted).  Consequently, "a reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless."  *Id*. (citing *Stout*, 454 F.3d at 1054); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ").  The court is instead constrained to review the reasons the ALJ asserts, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), because "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's

conclusions.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103) (some brackets in original).  Thus, "[b]ecause we cannot engage in such substitution or speculation, such error will usually not be harmless." *Id*.

## IV. <u>DISCUSSION</u>

The court addresses the dispositive basis for remand—the ALJ failed to fairly and fully develop the record upon which to assess Claimant's residual functional capacity—and thus need not reach the other issue.

Although the claimant bears the overall burden of proving disability, the ALJ in Social Security cases has an independent and "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotation marks omitted).  "This duty exists even when the claimant is represented by counsel." *Id*. "The existence of ambiguous or inadequate evidence triggers the ALJ's duty to 'conduct an appropriate inquiry,'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), and "the claimant must offer "some evidence to trigger the duty," *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).  The ALJ need not make "a specific finding of ambiguity or inadequacy," *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011), and a claimant need only "raise a suspicion" about his impairment to trigger the ALJ's duty to develop the record.  *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

9

Methods for the ALJ to discharge this duty include: "subpoenaing the Claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citations omitted). The ALJ may also order further consultative examinations to "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." *See* 20 C.F.R. § 404.1519a(b).  Once the duty to further develop the record is triggered, failure to do so constitutes reversible error.  *Tonapetyan*, 242 F.3d at 1150–51.

Here, the record was inadequate as to the issue of Claimant's physical conditions.  Although the ALJ addressed some of them, the ALJ did not specifically address Claimant's testimony that he could lift no more than 20 pounds, or the medical evidence—dated as early as March 2020—of back, neck, and shoulder joint pain.  Consequently, the residual functional capacity to perform a "full range of work at all exertional levels," AR 21, did not reflect all of Claimant's functional limitations or restrictions and thus the ALJ's decision is not supported by substantial evidence. *See* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)[6] ("The RFC assessment must first identify the individual's functional

_____

[6] "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and

(continued . . .)

limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b) [(physical abilities)] . . . . Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."); *see also Gutierrez*, 740 F.3d at 522 (stating that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

In his prehearing memorandum, Claimant asserted that, in addition to having bipolar disorder, he quit working due to physical symptoms.  AR 462. Likewise, at the administrative hearing, Claimant conceded that his medical record focuses mainly on his psychological condition, but that his inability to work is also due to physical reasons:

> ATTY: . . . In any case, he actually had to stop working. He will testify this is because of his arm, his vertigo and his fatigue.  So it was actually for physical reasons, although his record is overwhelmingly—it discusses his psychological condition that did impact—
>
> ALJ:  Yeah.
>
> ATTY:  —his ability to work and his ability to find jobs, but it was his physical condition.  And I would point out that, given his past work and his age, this does disable[] him under

---

are to be relied upon as precedents in adjudicating cases."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation omitted).

Medical Vocational Rule 201.02,[7] even though he has additional limitations due to his mental health as well.

> ALJ:  Well, yeah, that would be a sedentary [residual functional capacity] that you're talking about.  Okay.  Well, we'll look at that.

> ATTY:  Right, and it's—the theory is the vertigo actually reduced him to the sedentary.

AR 40–41.  The ALJ himself acknowledged a lack of medical evidence as to Claimant's physical condition, *see* AR 49 ("You know, you've got sedentary and I'm kind of at a loss as to how I get there with the evidence.  Do you want to help me out there?"), as well as the lack of a physical consultative examination:

> ATTY:  I wish—

> ALJ:  Okay.

> ATTY:  —they would have sent him to a physical [consultative examination]. . . .

> ALJ:  Okay. . . . Yeah, I saw this.

AR 50.  The ALJ later questioned Claimant as to physical limitations preventing him from working:

> Q  Yeah, okay.  How about physically, do you have any physical problems that would prevent you from working?

> A  Yeah, my back.

---

[7]  Medical Vocational Rule 201.02 addresses the maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairment(s) at Claimant's "advanced age" of 60 or older.  *See* 20 C.F.R.  Pt. 404, Subpt. P, App. 2.

Q  Your back?  Your back hurts a bit?

A  And my arms and I cannot carry heavy stuff.

Q  Okay.  Okay, fair enough.  So when you say you can't carry heavy stuff, what do you mean by that?

A  Yeah.

Q  How heavy?

A  Like 50 pounds and may be 60 pounds.  It's heavy stuff in construction.

. . . .

Q  Okay.  Well, so you couldn't lift 50 or 60 pounds?

A  Yeah.

Q  Okay.  Could you lift 25 pounds?

A  I can try a little.

Q  Well, I don't want—I'm just wondering, you know, what do you think you could comfortably pick up?

A  Maybe 20 pounds?

Q  Twenty pounds?  Okay.  And is that because of your back?

A  Yeah.

Q  Okay.  You said your arms bothered you.  What's wrong with your arms?

A  The nerves going down on my arms and I couldn't lift it up—when I lift up the box, I cannot lift the box over my head when I stacked it—

13

. . . .

A   —on the pallet and it just becomes sore.  It's constant
pain.

AR 52–53.  The ALJ, however, did not appear to take any of this testimony into

consideration when he posed a hypothetical to the vocational expert ("VE"), asking

the VE to consider whether someone with "no exertional limitations. . . . limited to

simple/routine tasks with occasional interaction with co-workers and supervisors

and no interaction with the general public" could perform any of Claimant's past

work as a shipping and receiving clerk, construction laborer, and maintenance

worker/lawn mower.  AR 54; *see also* AR 26–27.

In the written decision, at Step 2, the ALJ addressed Claimant's

hypertension, benign vertigo, hyperlipidemia, and hand numbness, stating that

because no records indicated "significant functional limitations or treatment," these

physical conditions are not severe.[8]  AR 18–19.  The ALJ also stated that he

considered "all of the claimant's medically determinable impairments, including

those that are not severe, when assessing the claimant's residual functional

_____

[8]  For example, as justification to find Claimant's benign vertigo not severe, the ALJ
acknowledged the Progress Note from September 26, 2018, which indicated that Claimant
"reports dizziness when standing however resolves quickly."  AR 541 (Exhibit 4F at 37); *see
also* AR 50 (reading from same exhibit at the administrative hearing).

14

capacity."[9]  AR 19.  Also at Step 2, the ALJ considered prior administrative

medical findings[10] that Claimant alleged no physical ailments.  *See* AR 80, 129,

483 (noting October 3, 2019 comment that Claimant's work "[r]equires heavy

lifting however he is able to do his work without difficulty"); AR 109 (noting

October 13, 2019 observation "[n]ot alleging PHYS"); AR 92 (noting July 16,

2020 comment "no physical allegations").

　　　　　The ALJ's summary of Claimant's testimony in the written decision

included his ability to lift no more than 20 pounds and difficulty lifting his arms

overhead:

> [C]laimant testified he is not currently working and last worked
> in November of 2020.  The claimant stated he lives by himself,
> cooks his own food, and washes his own clothes.  He testified
> he is not working now because he gets depressed when
> someone tells him what to do and does not want to get into a
> fight with others.  The claimant stated he takes medication for
> bipolar disorder and depression.  He stated he takes public
> transportation to go to doctor's appointments.  He further
> testified that he has not had surgery on his back or shoulders,

---

[9]  In his brief, the Commissioner—misleadingly—states that the ALJ found that "the record did not show 'significant functional limitations or treatment for [his physical] conditions.'"  ECF No. 10 at PageID.836.  But, in context, the ALJ was not referring to *all* physical limitations.  Instead, he wrote that "there is objective evidence in the medical record that the claimant has hypertension, benign vertigo, hyperlipidemia, and hand numbness. . . . However, there are no records indicating that *these* conditions are severe.  The records do not indicate significant functional limitations or treatment for *these* conditions."  AR 18 (emphases added).  "*These* conditions" refer to Claimant's hypertension, benign vertigo, hyperlipidemia, and hand numbness—not *all* of his physical conditions, as the Commissioner incorrectly asserts.

[10]  "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in your current claim based on their review of the evidence in your case record . . . ."  20 C.F.R. § 416.913.

but he has soreness in his back after 2 car accidents.  He also testified he could work as a lawn mower.  He stated his bipolar disorder and depression affect his ability to work because he gets angry easily.  *Physically, he does not feel he could lift more than 20 pounds and has difficulty lifting his arms over his head.*  He further testified he has never used methamphetamine and has quit drinking and stopped smoking marijuana in June 1997.

AR 21–22 (emphasis added).  But the ALJ found the prior administrative medical findings of no physical limitations, made before Claimant alleged physical symptoms, to be "persuasive," AR 19, without considering—or even mentioning—other medical evidence of "shoulder joint pain."  *See* AR 524 (October 5, 2020 Progress Note acknowledging "Shoulder joint pain"); AR 536 (March 28, 2019 Progress Note acknowledging "Shoulder joint pain" and "Shoulder: arthralgia"); AR 555 (October 5, 2017 physical examination note indicating "slow active range of motion," "[r]otator cuff and deltoid strength limited due to patient input," and "left shoulder possible rotator cuff tear and slap tear"); AR 638 (March 23, 2020 medical note observing "tenderness (right shoulder)").

Nor did the ALJ acknowledge medical records documenting complaints of back and neck pain.  *See* AR 680 (December 18, 2021 psychological evaluation noting "back and neck pain").  Rather, the ALJ listed Claimant's activities of daily living—preparing his own meals, cleaning his room, doing laundry, washing dishes—and weekly activities, such as going to the beach and hiking every Sunday, AR 22, without providing specific, clear and convincing

16

reasons to reject Claimant's allegations and medical evidence of back, neck, and

shoulder pain.  Under Ninth Circuit law, this is improper:

> [A]n ALJ does not provide specific, clear, and convincing
> reasons for rejecting a claimant's testimony by simply reciting
> the medical evidence in support of his or her residual functional
> capacity determination.  To ensure that our review of the
> ALJ's credibility determination is meaningful, and that the
> claimant's testimony is not rejected arbitrarily, we require the
> ALJ to specify which testimony she finds not credible, and then
> provide clear and convincing reasons, supported by evidence in
> the record, to support that credibility determination.

*Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021) (quoting *Brown-Hunter*, 806

F.3d at 489).

Medical evidence of Claimant's back, neck, and shoulder pain

triggered the ALJ's duty to develop the record because it was "inadequate to allow

for proper evaluation of the evidence," *Mayes*, 276 F.3d at 459–60.  And the

residual functional capacity "to perform a full range of work at all exertional

levels" was not supported by substantial evidence.  In fact, "a failure to first make

a function-by-function assessment of [an] individual's limitations or restrictions"

could lead to "overlooking some of an individual's limitations or restrictions,"

resulting in "an incorrect use of an exertional category to find that the individual is

able to do past relevant work as it is generally performed and an erroneous finding

that the individual is not disabled."[11]   SSR 96-8p, 1996 WL 374184, at *4 (July 2,

1996).  Social Security Ruling 96-8p also requires the ALJ to consider *all*

allegations and ensure any available information about symptoms to assess residual

functional capacity on a full record:

> The adjudicator must consider all allegations of physical and
> mental limitations or restrictions and make every reasonable
> effort to ensure that the file contains sufficient evidence to
> assess [residual functional capacity].  Careful consideration
> must be given to any available information about symptoms
> because subjective descriptions may indicate more severe
> limitations or restrictions than can be shown by objective
> medical evidence alone.

*Id*. at *5; *see also* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will

evaluate every medical opinion we receive.").  Failing to consider even those

symptoms that are not severe could affect the outcome of a claim:  While a "not

severe" impairment(s) standing alone may not significantly limit an individual's

ability to do basic work activities, it may—when considered with limitations or

restrictions due to other impairments—be critical to the outcome of a claim."  *Id*.

As stated, the ALJ addressed some impairments as "not severe" (hypertension,

benign vertigo, hyperlipidemia, and hand numbness), but not all of them (back,

neck, and shoulder pain).

---

[11]   On this record, the court is unable to determine whether Claimant is disabled, nor is it
permitted to make independent findings based on the evidence before the ALJ.  *See Brown-
Hunter*, 806 F.3d at 492.

Furthermore, it was the ALJ's duty to not only "resolve ambiguities in the record" but also to "resolve conflicts in the testimony." *Brown-Hunter*, 806 F.3d at 492; *see also* SSR 96-8p, 1996 WL 374184, at *7 (providing that the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").  At the least, ordering a physical consultative examination may have "resolve[d] an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision."  20 C.F.R. § 404.1519a(b); *see also* 20 C.F.R. § 404.1519a(b) (providing that the ALJ may order a consultative examination to secure needed medical evidence if, for example, there is an indication of a change in claimant's condition that is likely to affect his ability to work, but the current severity of his impairment is not established).

Once triggered by Claimant's allegations and proffer of some medical evidence of physical limitations, the ALJ had a duty to develop the record.  The ALJ committed reversible legal error by failing to do so.  *Tonapetyan*, 242 F.3d at 1150–51.  The court therefore remands for further development of the record.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the Commissioner's final decision and REMANDS this action for further proceedings consistent with this Order.  The Clerk of Court is directed to close the case.

19

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 16, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Dela Cruz v. Kijakazi*, Civ. No. 23-00343 JMS-RT, Order Reversing the Administrative Law Judge's Decision and Remanding for Further Proceedings